# IN THE COURT OF APPEALS OF IOWA

No. 23-1644
Filed December 20, 2023

IN THE INTEREST OF E.W. and H.W.,
Minor Children,

C.W., Father,
        Appellant.
_____

Appeal from the Iowa District Court for Crawford County, Kristal L. Phillips,

District Associate Judge.

A father appeals the termination of his parental rights to his two children.

**AFFIRMED.**

Dean A. Fankhauser of Tigges, Bottaro & Lessmann, LLP, Sioux City, for

appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Ryan Gaskins of Boerner & Goldsmith Law Firm, PC, Ida Grove, attorney

and guardian ad litem for minor children.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to his twins. He contends the State failed to prove both the grounds for termination and that termination is in the children's best interests. Upon our review, we affirm the termination of the father's parental rights.

## I. Background Facts and Proceedings.

The Iowa Department of Health and Human Services removed E.W. and H.W. from their parents' custody just five days after their birth in August 2022. The Department had concerns about the parents' ability to feed the babies and notice hunger cues, the children's withdrawal symptoms at birth, and the father's behavior at the hospital. Specifically, when discussing paternity, the father became agitated, and security had to be called. He later told the Department he had "blackout episodes in response to stressful situations."

After removal, the parents were initially given supervised visitation at their shared home. During one visit, the Family Centered Services worker reported the father struggled to recognize when the children were hungry and became "verbally aggressive" upon discussing bottle and feeding issues. Visits were moved to the community based on these concerns and the poor state of the home.

In September 2022, the children were adjudicated in need of assistance. In October, the father was charged with second-degree sexual abuse, for allegedly abusing the mother's four-year-old daughter. He was held in jail for approximately six months, but he was eventually released on bond and moved to Nebraska to live with his sister. While living there, the Department had concerns about the father's stability because of his changing romantic relationships and inconsistency

with services and visitation. He also failed to secure adequate mental-health services and was hospitalized for anxiety. After the hospitalization, the father told the Department he had decided to voluntarily terminate his parental rights to the children and declined further services.[1]

On March 27, 2023, the father pled guilty to the lesser charge of enticing a minor for sexual purposes. The district court later sentenced him to an indeterminate term of incarceration not to exceed five years. Notwithstanding this turn of events, at the termination hearing the father claimed he was innocent and only pled guilty to protect the minor victim from the trauma of the proceedings. By the termination hearing on August 3, the father testified he was attempting return to Nebraska through an interstate compact. He estimated he would be released from prison within two to three months.

Following the termination hearing, the juvenile court terminated the father's parental rights, and he appealed.[2]

## II.    Review.

Our review of termination proceedings is de novo. *See In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

---

[1] While he does not dispute this occurred, the father presents an alternative narrative. He told the Department that he was doing well in Nebraska, operating his own lawncare business, and working on obtaining reliable transportation. He also testified there were more services and family support available for both him and the children there, and he only missed recent visits because of transportation issues. He also claimed he requested services from the Department that were never fulfilled, such as car repairs or gas cards.

[2] The mother's rights were also terminated, but she does not appeal.

### III.    Grounds for Termination of the Father's Rights.

The juvenile court found statutory grounds authorizing termination satisfied, pursuant to Iowa Code section 232.116(1)(e) and (h) (2023), and determined termination to be in the children's best interests.  The father argues that the State failed to establish grounds for termination under section 232.116(1)(e), but he neglects to address section 232.116(1)(h).  We may affirm the termination of parental rights on any one statutory ground when the juvenile court finds multiple grounds satisfied.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  The father's failure to challenge all of the statutory grounds relied upon by the juvenile court waives any claim of error related to the unchallenged grounds, in this case section 232.116(1)(h).  *See, e.g.*, *In re A.W.*, No. 23-1125, 2023 WL 6290680, at *1 (Iowa Ct. App. Sept. 27, 2023); *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020); *In re N.S.*, No. 14-1375, 2014 WL 5253291, at *3 (Iowa Ct. App. Oct. 15, 2014).  Nonetheless, we conclude the State established grounds for termination under section 232.116(1)(h).  The court may terminate parental rights to a child under section 232.116(1)(h) if it finds:

1) The child is three years of age or younger.
2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

We agree with the juvenile court that all four elements have been established for both children.  E.W. and H.W. are less three years old, being born

in August 2022, and were adjudicated in need of assistance in September 2022. Both were removed from parental custody at five days old and have not had a trial visit or return home since then. These facts are largely indisputable. Finally, we find there is clear and convincing evidence that the children could not be returned to their father's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.).

The father argued at the termination hearing that he believed he would be released from prison within two or three months and the children could be returned to his care at that time, but this is not the standard we use. Instead, we consider the circumstances *at the time of the termination proceedings. In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (interpreting "at the present time" in Iowa Code section 232.116(1)(h)(4) to be the time of the termination hearing). The father was incarcerated and could not resume immediate custody of the children, and we do not excuse his inability to parent because of his incarceration. *Cf. In re S.S.*, No. 19-0291, 2019 WL 6894282, at *3 (Iowa Ct. App. Dec. 18, 2019) (upholding a finding of abandonment in a private termination action when the incarcerated father's visits with the child were terminated because the father attempted to smuggle drugs into the prison during the visits). Even when the father was not incarcerated he was not compliant with services and failed at reunifications. The father has not addressed the concerns raised by the Department at the onset of this case and has not established he is able to provide for the children's nutritional needs and acknowledge their hunger cues. His behavior was also sometimes

volatile and aggressive, and he was inconsistent with the mental-health services directed by the Department. His visits with the children were not regular. Finally, he oscillated between being interested in his children and then suddenly disinterested. These circumstances do not establish an ability to consistently care and provide for the children even if he was not in custody at the time of the termination hearing.

While the father argues the Department did not fulfill its reasonable-efforts obligation, we disagree. *See* Iowa Code § 232.102(6) (requiring the Department to "make every reasonable effort to return the child[ren] to [their] home as quickly as possible consistent with the best interests of the child[ren]"). The reasonable-efforts mandate is not "a strict substantive requirement" and instead impacts the State's burden to prove sufficient statutory grounds for termination. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made." *Id.* at 493–94. Because the father did not challenge the Department's efforts until the termination proceeding, we determine he did not preserve error and cannot raise such a challenge now. *See id.* at 494. But even if we did address this issue as preserved, he still could not prevail because the Department offered several services, including mental health, physical health, visitations, transportation assistance, education, and others. The father did not always take advantage of these services by declining or refusing to comply. We therefore find the Department offered adequate support and met their reasonable-efforts obligation.

The State established that the children could not be returned to the father's custody and established a statutory ground for termination.

## IV. Best Interests.

Similarly, we find termination is in the best interests of the children. In determining best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]," Iowa Code § 232.116(2), with a "defining element" of our analysis being the children's "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citations omitted). Termination proceedings are therefore "viewed with a sense of urgency." *C.B.*, 611 N.W.2d at 495. "We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." *D.W.*, 791 N.W.2d at 707 (citation omitted). It is not in the children's best interests to wait an indefinite amount of time for their father to potentially be released, become stable, and finally comply with the Department's directives. Rather, we consider the "past performance" of the father, which we have already determined departs from the children's long-term care and needs, as indicative of the quality of care he would likely provide in the future. *See C.B.*, 611 N.W.2d at 495 (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). Termination is in the children's best interests.

*V.*      ***Disposition.***

Because the statutory grounds for termination have been established and termination is in the best interests of the children, we affirm termination of the father's parental rights.

**AFFIRMED.**